UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEONTAE J. GORDON,

        Plaintiff,                        Case No. 1:22-cv-736

v.                                             Honorable Paul L. Maloney

RYAN BOWNE et al.,

        Defendants.
_____/

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 3.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's § 1983 civil conspiracy claim, Fourteenth Amendment equal protection claim, and claims for declaratory and injunctive relief. Plaintiff's First Amendment retaliation claim for monetary damages against Defendants Bowne, Williams, Horne, and John/Jane Doe Corrections Officers remains in the case.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF officials: Assistant Deputy Warden Ryan Bowne; Inspector Unknown Williams; and Corrections Officers Unknown Horne and "John/Jane Doe[s]." (Compl., ECF No. 1, PageID.4.)[1]

In Plaintiff's complaint, he alleges that on April 26, 2022, he "reported to his weight pit callout in the school building," and Corrections Officer Merry (not a party) "instructed Plaintiff to take his tablet back to the unit." (*Id.*, PageID.9.) Plaintiff responded: "Come on man, I'm trying to work out before my lawsuit hearing in 45 minutes." (*Id.*) Corrections Officer Merry asked "about the nature of the lawsuit," and Plaintiff said that "the lawsuit was against DRF for not allowing him to work his weight pit callout, among other things." (*Id.*) Plaintiff states that Defendant Bowne was present during this conversation. (*Id.*) Corrections Officer Merry told Plaintiff to "take [his] tablet back and return." (*Id.*)

When Plaintiff returned, Defendant Bowne, stated: "You're no longer on the callout. I recall that lawsuit and I don't have any f**cking respect for people who sue my staff, get the f**k out of here. I just might sue your ass with a ticket." (*Id.* (asterisks in original).) Plaintiff asked what ticket Defendant Bowne was referring to, and Defendant Bowne "stated that the violation was

---

[1] In this opinion, the correct corrects the punctuation and spelling in quotations from Plaintiff's complaint and exhibits.

2

suing his staff." (*Id.*) As Plaintiff was leaving, Defendant Bowne said, "Get ready, the war is on, my soldiers will see you shortly." (*Id.*) Plaintiff filed a grievance about the matter. (*Id.*)

The next day, April 27, 2022, Defendant Bowne "falsified an 'insolence' misconduct against Plaintiff for the 4/26/22 encounter." (*Id.*) On April 28, 2022, Plaintiff "was reviewed on the misconduct at approx[imately] 1:30 p.m.," and then around 10:00 p.m., approximately ten officers "stormed" Plaintiff's housing unit and "took him to segregation." (*Id.*, PageID.9–10.)

"Defendant Horne delivered Plaintiff's property to the segregation storage area," and when Plaintiff asked Defendant Horne for a property receipt, Defendant Horne told Plaintiff "that a receipt should be the least of [Plaintiff's] worries because him and his 'partners' just trashed [Plaintiff's] s**t." (*Id.*, PageID.10 (asterisks in original).) Plaintiff claims that Defendant Horne stated, "let that be a lesson for you suing us and pissing off the ADW [Defendant Bowne]." (*Id.* (brackets in original).) Plaintiff alleges that Defendant Horne and "John/Jane Doe Correction Officers" trashed some items that were in Plaintiff's cell and "gave the rest of Plaintiff's $200.00 in food to the unit porters." (*Id.*) Plaintiff also alleges that these Defendants gave Plaintiff one noodle food item "out of the dozens that Plaintiff had," and one shoe from three different pairs of shoes and then threw away the matching shoe from each of the three pairs. (*Id.*) Plaintiff states that he filed a grievance regarding this matter. (*Id.*)

On April 29, 2022, Plaintiff was released from segregation. (*Id.*) "[D]espite not receiving any misconduct or Notice of Intent, Plaintiff was upgraded to level IV custody." (*Id.*) Subsequently, on May 9, 2022, Plaintiff "received a Security Classification Screen officially increasing Plaintiff's custody to Level IV, despite Plaintiff scoring as a Level I inmate with zero points." (*Id.*) Plaintiff states that "[t]he screen was dated 4/29/22 and approved by Defendant

3

Bowne," and that the reason listed for the security increase was that "Investigation warrants increased security level." (*Id.*, PageID.10–11.)

On May 10, 2022, Plaintiff spoke with Defendant Bowne and asked him why Plaintiff was "being held in level IV with zero points and no misconduct or [Notice of Intent]." (*Id.*, PageID.11.) Plaintiff claims that Defendant Bowne told Plaintiff that he "should not have sued [Defendant Bowne's] staff and wrote [a] grievance on [Bowne], and that Plaintiff would sit in level IV and think about it until Bowne [wa]s ready to release him back to level II." (*Id.*) The following day, May 11, 2022, Plaintiff spoke with Prison Counselor Miller (not a party) about the issue, and Miller called Defendant Williams on the telephone. (*Id.*) After the telephone call, Prison Counselor Miller told Plaintiff: "Per Inspector Williams . . . you're back here because you pissed off ADW Bowne, wrote [a] grievance on him and sued staff here. So get comfortable, looks like you're going to be here for a while." (*Id.*) Plaintiff claims that Prison Counselor Miller told Plaintiff that Defendant Williams "put a hold on [Plaintiff], meaning Plaintiff could not be moved without Williams's authorization." (*Id.*) Plaintiff filed a grievance about the matter. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants Bowne, Williams, Horne, and "John/Jane Doe Corrections Officers" violated his First Amendment rights by retaliating against him. (*Id.*, PageID.14–15.) Plaintiff also avers that Defendants Bowne and Williams violated his constitutional rights by engaging in a "14th Amendment Civil Conspiracy." (*Id.*, PageID.11, 14.) Further, Plaintiff avers that Defendants Bowne and Williams violated his right to equal protection under the Fourteenth Amendment. (*Id.*, PageID.12–14.) As relief, Plaintiff requests punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.16.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

5

### A.   First Amendment Retaliation

Plaintiff alleges that Defendants Bowne, Williams, Horne, and John/Jane Doe Corrections Officers violated his First Amendment rights by retaliating against him. (Compl., ECF No. 1, PageID.14–15.) Specifically, Plaintiff claims that Defendants engaged in the following retaliatory actions: Defendant Bowne issued him a false misconduct ticket for insolence; Defendant Bowne placed him in segregation and then subsequently moved him to a higher security level; Defendant Williams placed a hold on Plaintiff, meaning Plaintiff could not be moved from the higher security level without Defendant Williams's authorization; and Defendants Horne and John/Jane Doe Corrections Officers destroyed his personal property.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Although Plaintiff has by no means proven his retaliation claims, taking Plaintiff's allegations as true and in the light most favorable to Plaintiff, the Court may not dismiss his retaliation claims against Defendants Bowne, Williams, Horne, and John/Jane Doe Corrections Officers on initial review.

### B. Civil Conspiracy

Plaintiff claims that Defendants Bowne and Williams violated his constitutional rights by engaging in a "14th Amendment Civil Conspiracy." (Compl., ECF No. 1, PageID.11, 14.) As an initial matter, the Fourteenth Amendment itself does not protect against a "civil conspiracy." Regardless, the Court will address *pro se* Plaintiff's civil conspiracy claim pursuant to 42 U.S.C. § 1983.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff alleges in a conclusory manner that "'a plan existed' . . . between Defendants Bowne and Williams to retaliate against Plaintiff for petitioning the government for redress of grievances," and "'they shared in the general conspiracy' to place and hold Plaintiff in level IV," and the "'[o]vert action was committed' [when] they instructed staff to remove Plaintiff from level II . . . to level IV." (Compl., ECF No. 1, PageID.11.) Although it is clear that Plaintiff believes that Defendants Bowne and Williams acted together, the only allegations that connect these

7

Defendants are as follows: Plaintiff contends that Prison Counselor Miller called Defendant Williams on the telephone regarding Plaintiff's security level and Prison Counselor Miller told Plaintiff that "[p]er Inspector Williams . . . you're back here [in level IV] because you pissed off ADW Bowne, wrote [a] grievance on him and sued staff here." (Compl., ECF No. 1, PageID.11.) Plaintiff claims that Prison Counselor Miller also told Plaintiff that Defendant Williams "put a hold on [Plaintiff], meaning Plaintiff could not be moved without Williams's authorization." (*Id.*) The fact that Defendant Williams told Prison Counselor Miller, who in turn told Plaintiff, that Plaintiff was assigned to level IV because he had "pissed off ADW Bowne" does not show the existence of a civil conspiracy under § 1983. Likewise, the fact that Defendant Williams "put a hold on [Plaintiff]," meaning that Defendant Williams had to authorize any subsequent move does not show the existence of an agreement between Defendant Williams and Bowne.

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences involving Defendants Bowne and Williams. Simply because Defendant Williams relayed to Prison Counselor Miller that Plaintiff had "pissed off ADW Bowne" does not create a connection between Defendant Williams and Defendant Bowne. Indeed, besides alleging that Defendant Williams relayed Defendant Bowne's alleged sentiment to Prison Counselor Miller, Plaintiff alleges no facts to suggest any connection between Defendants Williams and Bowne. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant took allegedly adverse actions against him within a short period of time.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that

an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants Bowne and Williams, and instead, alleges that on at least two discrete occasions, Defendants allegedly took actions against him, Plaintiff fails to state a plausible claim of conspiracy against Defendants Bowne and Williams.

      **C.**      **Fourteenth Amendment Equal Protection Clause**

Plaintiff also alleges that Defendants Bowne and Williams violated his Fourteenth Amendment right to equal protection under a "class-of-one" theory. (Compl., ECF No. 1, PageID.12–14.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but

9

rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" (citation omitted)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

10

In this action, in support of his class-of-one equal protection claim, Plaintiff alleges that on the same day that he was "taken to segregation"—April 28, 2022—another inmate, Currington, "was also taken to level IV." (Compl., ECF No. 1, PageID.12.) Plaintiff claims that he and inmate Currington "are similarly situated in all aspects and both had zero points, [and] both were in level II, housing unit 900." (*Id.*) Plaintiff states that inmate Currington's cell was shaken down and correctional officers found two cell phones hidden in his cell. (*Id.*) Inmate Currington "was subsequently found guilty of possessing both phones." (*Id.*) Plaintiff claims that "within a mere (2) weeks of being found guilty, [inmate] Currington was transferred to a level II facility." (*Id.*) Plaintiff alleges that "Defendant[s] Bowne and Williams would later change the narrative stating that Plaintiff was being held in level IV because they believe[d] he gave the phones to Currington, and thus, they were waiting for the Michigan State Police to do a data extraction." (*Id.*) Plaintiff claims that this was not true, but "[n]evertheless, taking this as true," inmate Currington was issued, and found guilty of, a class I misconduct and "was reduced back to level II just (2) weeks later," and in contrast, Plaintiff was "'allegedly suspected' of giving Currington the phones, but was not ever cited for anything; yet, Plaintiff is still . . . held in level IV." (*Id.* (emphasis omitted).) Plaintiff also claims that on June 30, 2022, Defendant Bowne told Plaintiff that the Michigan State Police had completed their investigation and "there was not any data on the phones that connected them to Plaintiff, but that Plaintiff would remain in level IV." (*Id.*, PageID.13.) Plaintiff alleges that this shows "disparate treatment between the similarly situated Plaintiff and [inmate] Currington." (*Id.*)

Although Plaintiff alleges that he and inmate Currington were "similarly situated in all aspects," Plaintiff's own allegations show that they were not. Specifically, earlier in Plaintiff's complaint, he states that he received an insolence misconduct ticket on April 27, 2022, and was

11

moved to segregation on April 28, 2022, due to this ticket, and that on April 29, 2022, he was then released from segregation and placed in a level IV housing unit. (*Id.*, PageID.10.) It is unclear what happened with the insolence charge—Plaintiff does not indicate whether he was found not guilty, guilty, or whether the charge was dropped. Regardless, Plaintiff then contends that he was suspected of providing the prohibited cell phones to Currington. (*Id.*, PageID.12.) The circumstances alleged by Plaintiff that led to his placement in level IV housing are materially different than the circumstances surrounding inmate Currington's placement in level IV and subsequent transfer to a level II facility. Plaintiff was issued a misconduct ticket for insolence and was then suspected of engaging in additional prohibited conduct by providing the cell phones to inmate Currington; Currington had one such incident of misconduct and was found guilty of the issued class I misconduct and presumably served his sentence for the misconduct conviction by remaining in segregation and/or level IV for two weeks. In comparison, at the time that inmate Currington was transferred to a level II facility, the investigation into Plaintiff's involvement with the cell phones was ongoing. Under these circumstances, Plaintiff's allegations show that the events surrounding his placement in segregation and then in level IV, and inmate Currington's placement in level IV were materially different.

In summary, Plaintiff simply fails to show that he and inmate Currington were similarly situated in all relevant respects. Although Plaintiff alleges that they were in fact similarly situated, Plaintiff's conclusory assertion unsupported by the facts alleged does not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claim.

### D.     Declaratory and Injunctive Relief

As set forth above, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. However, Plaintiff is no longer confined at DRF, which is where he avers that Defendants Bowne, Williams, Horne, and "John/Jane Doe Corrections Officers" are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at LRF, and Defendants Bowne, Williams, Horne, and John/Jane Doe Corrections Officers are not employed at that correctional facility. Therefore, Plaintiff cannot maintain his claims for injunctive and declaratory relief against Defendants, and the Court will dismiss these claims.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's § 1983 civil conspiracy claim, Fourteenth Amendment equal protection claim, and claims for

declaratory and injunctive relief will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claim for monetary damages against Defendants Bowne, Williams, Horne, and John/Jane Doe Corrections Officers remains in the case.

    An order consistent with this opinion will be entered.

Dated:   November 29, 2022                    /s/ Paul L. Maloney
                                                                                  Paul L. Maloney
                                                                                 United States District Judge