UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAE J. GORDON,

        Plaintiff,

v.

RYAN BOWNE, *et al*.,

        Defendants.
_____/

Case No. 1:22-cv-736

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Deontae Gordon ("Gordon"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants Ryan Bowne, Chad Williams, and Ian Horne's motion for partial summary judgment on the basis of exhaustion (ECF No. 26). Defendants' motion seeks summary judgment on Gordon's claim that defendant Bowne retaliated against Gordon by issuing him a false misconduct ticket for insolence.

### I.  Gordon's allegations

The incidents alleged in this lawsuit occurred at the Carson City Correctional Facility (DRF). Opinion (ECF No. 9, PageID.71). Gordon sued Assistant Deputy Warden (ADW) Ryan Bowne, Inspector Chad Williams, and Corrections Officer (CO) Ian Horne. *Id*.[1] After initial screening, the Court allowed Gordon's First Amendment retaliation claims to proceed against

---

[1] The Court notes that Gordon's complaint also referred to unidentified defendants "John/Jane Doe Correction Officers". *See* Compl. (ECF No. 1, PageID.1).

1

defendants Bowne, Williams and Horne.  *Id*. at PageID.83.  The Court construed Gordon's complaint as alleging the following acts of retaliation:

> Defendant Bowne issued him a false misconduct ticket for insolence; Defendant Bowne placed him in segregation and then subsequently moved him to a higher security level; Defendant Williams placed a hold on Plaintiff, meaning Plaintiff could not be moved from the higher security level without Defendant Williams's authorization; and Defendants Horne and John/Jane Doe Corrections Officers destroyed his personal property.

*Id*. at PageID.75.

The Court summarized Gordon's allegations as follows.  ADW Bowne "falsified an 'insolence' misconduct against Plaintiff" on April 27, 2022.  *Id*. at PageID.72. The alleged falsified misconduct arose from an encounter on April 26, 2022, during which ADW Bowne allegedly told Gordon that "I just might sue your ass with a ticket" because Gordon "was suing his staff."  *Id*. at PageID.71-72.

Gordon was reviewed on the misconduct during the afternoon of April 28, 2022, and officers took him to segregation around 10:00 p.m.  *Id*. at PageID.72.

> "Defendant Horne delivered Plaintiff's property to the segregation storage area," and when Plaintiff asked Defendant Horne for a property receipt, Defendant Horne told Plaintiff "that a receipt should be the least of [Plaintiff's] worries because him and his 'partners' just trashed [Plaintiff's] s**t." (*Id.*, PageID.10 (asterisks in original).) Plaintiff claims that Defendant Horne stated, "let that be a lesson for you suing us and pissing off the ADW [Defendant Bowne]." (*Id.* (brackets in original).)

*Id*.

On April 29, 2022, Gordon was released from segregation and upgraded to Level IV custody "[D]espite not receiving any misconduct or Notice of Intent[.]" *Id*.

On May 10, 2022, ADW Bowne allegedly told Gordon "that he 'should not have sued [Defendant Bowne's] staff and wrote [a] grievance on [Bowne], and that Plaintiff would sit

2

in level IV and think about it until Bowne [wa]s ready to release him back to level II.' " *Id*. at PageID.73.

On May 11, 2022, non-party Prison Counselor Miller contacted Gordon.

> After the telephone call, Prison Counselor Miller told Plaintiff: "Per Inspector Williams . . . you're back here because you pissed off ADW Bowne, wrote [a] grievance on him and sued staff here. So get comfortable, looks like you're going to be here for a while." (*Id*.) Plaintiff claims that Prison Counselor Miller told Plaintiff that Defendant Williams "put a hold on [Plaintiff], meaning Plaintiff could not be moved without Williams's authorization." (*Id*.) Plaintiff filed a grievance about the matter. (*Id*.)

*Id*. Gordon seeks punitive damages, declaratory relief, and injunctive relief. *Id*.

## II.   Legal standard

### A.   Summary judgment

Defendants Bowne, Williams, and Horne moved for partial summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

3

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance

4

procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III.   Discussion

In their motion, defendants concede that Gordon exhausted his retaliation claims which arose from Grievance DRF-22-05-1076-17a ("1076") (that ADW Bowne and Inspector Williams retaliated against him by keeping him at Level IV) and in Grievance DRF-22-05-1017-19z ("1017") (CO Horne and another CO destroyed Gordon's belongings). *See* Defendants' Brief

at PageID.155-156 ("MDOC Defendants concede that Gordon exhausted his grievable claims against them insofar as he asserted them in DRF-1076 and DRF-1017."); Grievance 1017 (ECF No. 27-3, PageID.195-199); Grievance 1076 (ECF No. 27-3, PageID.190-194).

Defendants also refer to Grievance DRF-22-06-1250-27b ("1250") directed at ADW Bowne and Inspector Williams, in which Gordon claimed that defendants violated the Fourteenth Amendment because they treated him differently from Currington, another Level II prisoner being kept at Level IV. *See* Table (ECF No. 27, PageID.146); Grievance 1250 (ECF No. 27-3, PageID.186-189). While defendants point out that the grievance was rejected at all steps of the grievance process (*see* Defendants' Brief at PageID.155), exhaustion of this grievance is not relevant because the Court dismissed Gordon's Fourteenth Amendment equal protection claim. *See* Opinion at PageID.81-83.

The crux of defendants' motion is that Gordon did not properly exhaust Grievance DRF-22-05-1002-27a ("1002"), in which he claimed that ADW Bowne threatened him with a misconduct ticket in retaliation for Gordon filing lawsuits against prison staff. *See* Table at PageID.147. The MDOC rejected this grievance at Step I for "misconduct hearing issues". *See* Grievance 1002 at PageID.203. The MDOC investigated the grievance and rejected at Step II pursuant to Policy Directive 03.02.130 ¶ J.9. which provides:

> The prisoner is grieving a decision made in a Class I misconduct hearing or other hearings conducted by Administrative Law Judges (ALJ's) employed by the Michigan Department of Licensing and Regulatory Affairs (LARA), including property disposition and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing). Prisoners are provided an appeal process for Class I decisions pursuant to PD 03.03.105 "Prisoner Discipline."

*Id*. at PageID.202. Finally, the MDOC also rejected the grievance at Step III. *Id*. at PageID.200.

6

The issue before the Court is whether Gordon properly exhausted his claim that ADW Bowne retaliated against Gordon by issuing him a false misconduct ticket for insolence. Here, the misconduct report charged Gordon with a Class II Misconduct for insolence based on the following facts:

> On April 26, 2022, at 1310 hours Prisoner Gordon #308075 (900-718) entered the West School building for a weight room callout. Prisoner Gordon had his JP5 player and ear buds with him.  Prisoner Gordon was told by Officer Merry he could not have his player in the school building.  Prisoner Gordon responded by saying "this is bullshit."  I was standing near the officers station at the time and told prisoner Gordon he would need to take his player back to his housing unit.  As prisoner Gordon started to walk away from the area he turned around looking directly at me and stated "fucking white people" and then exited the building.  Prisoner Gordon's comment was meant to harass and degrade me.  Prisoner Gordon ID'd by OMNI facesheet and school callout.

Misconduct Ticket (ECF No. 27-4, PageID.205).

Gordon waived a hearing and pled guilty to the misconduct stating:

> I understand I have a right to a hearing.  I waive my right to a hearing and plead guilty to all charges.  I also waive my right to appeal and accept the sanctions imposed.

*Id*.  After the guilty plea, the Hearing Investigator imposed a sanction of 7 days loss of privileges. *Id*.

As discussed, Gordon alleged that the misconduct report was false and that ADW Bowne issued it in retaliation for Gordon's exercise of his First Amendment rights.  Defendants contend that Gordon did not exhaust this retaliation claim because misconduct tickets are non-grievable, prisoners must raise a retaliation claim during the misconduct hearing, and Gordon waived his ability to exhaust the retaliation claim when he entered the guilty plea.  *See* Defendants' Brief (ECF No. 27, PageID.153-154); *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011) (affirming the district court's finding that "although [the prisoner] did exhaust his claims arising out of the two major misconduct tickets by proceeding through a hearing, he did not complain that

7

the major misconduct tickets constituted *retaliation* in the hearing") (emphasis in original).[2]  Here, defendants explained that Gordon's claim is unexhausted under the rule announced in *Siggers*:

> . . . Gordon did not exhaust his retaliatory misconduct ticket.  This is because Gordon waived his ability to contest the ticket as retaliatory by pleading guilty to the ticket. As set forth above, to exhaust claims of a retaliatory misconduct ticket, Gordon needed to raise the issue of retaliation during the misconduct hearing and subsequently in his appeal. *Siggers*, 652 F.3d at 693-94.  By pleading guilty to the ticket, Gordon foreclosed the method by which he can challenge his ticket. The Court should therefore conclude that Gordon did not exhaust his retaliatory misconduct ticket against Bowne.

Defendants' Brief at PageID.155.

Based on this record, Gordon did not properly exhaust his claim that ADW Bowne retaliated against Gordon by issuing him a false misconduct ticket for insolence.  *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, Bowne's motion for partial summary judgment should be granted with respect to this retaliation claim.

---

[2] The Sixth Circuit has taken different approaches on whether exhaustion of an alleged retaliatory misconduct ticket must be raised in the misconduct hearing process or raised through a separate grievance. *Compare Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. July 27, 2011) (requiring prisoner alleging issuance of retaliatory misconduct ticket to raise the issue of retaliation in the misconduct hearing and appeal process) and *Reynolds-Bey v. Harris*, 428 Fed. Appx. 493, 500-01 (6th Cir. April 13, 2011) (suggesting that the filing of retaliatory misconduct reports is a grievable issue under MDOC policy directives).  *See Pann v. Hadden*, No. 1:22-cv-76, 2023 WL 6065096 at *1, fn. 1 (W.D. Mich. Sept. 18, 2023) (noting the differing opinions).  While the *Reynolds-Bey* opinion was entered first, it appeared as an unpublished opinion in the Federal Appendix. *See Reynolds-Bey*, 428 Fed. Appx. at 493 ("This case was not selected for publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 6th Cir. Rule 32.1."). To resolve this split in authority, the undersigned will follow the rule announced in *Siggers*, which is the controlling published opinion.  "A published prior panel decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (internal quotation marks omitted).  *See* 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels.  A published opinion is overruled only by the court en banc.").

**IV.    Recommendation**

For these reasons, I respectfully recommend that defendants' motion for partial summary judgment (ECF No. 26) be **GRANTED** as to Gordon's claim that ADW Bowne retaliated against Gordon by issuing him a false misconduct ticket.


Dated:  January 12, 2024                                           /s/ Ray Kent
                                                                   RAY KENT
                                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).