UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAE J. GORDON,

        Plaintiff,

v.

RYAN BOWNE, *et al.*,

        Defendants.

Case No. 1:22-cv-736

Hon. Paul L. Maloney

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Deontae Gordon, a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants Ryan Bowne, Chad Williams, and Ian Horne's motion for summary judgment (ECF No. 52) and plaintiff's motion for summary judgment against defendants Williams and Bowne (ECF No. 55).

**I.**      **Plaintiff's allegations**

The incidents alleged in this lawsuit occurred at the Carson City Correctional Facility (DRF). Opinion (ECF No. 9, PageID.71). Plaintiff sued Assistant Deputy Warden (ADW) Ryan Bowne, Inspector Chad Williams, and Corrections Officer (CO) Ian Horne. *Id*. The complaint also referred to unidentified COs "John Doe" and "Jane Doe". *See* Compl. (ECF No. 1, PageID.1). After initial screening, the Court allowed plaintiff's First Amendment retaliation claims to proceed against defendants Bowne, Williams and Horne. Opinion at PageID.83.

1

The Court summarized plaintiff's allegations as follows. ADW Bowne "falsified an 'insolence' misconduct against Plaintiff" on April 27, 2022. *Id*. at PageID.72. The alleged falsified misconduct arose from an encounter on April 26, 2022, during which ADW Bowne allegedly told plaintiff that "I just might sue your ass with a ticket" because plaintiff "was suing his staff." *Id*. at PageID.71-72.[1] Plaintiff was reviewed on the misconduct during the afternoon of April 28, 2022. *Id*. at PageID.72. Then, "around 10:00 p.m., approximately ten officers 'stormed' Plaintiff's housing unit and 'took him to segregation'". *Id*.

> "Defendant Horne delivered Plaintiff's property to the segregation storage area," and when Plaintiff asked Defendant Horne for a property receipt, Defendant Horne told Plaintiff "that a receipt should be the least of [Plaintiff's] worries because him and his 'partners' just trashed [Plaintiff's] s**t." (*Id.*, PageID.10 (asterisks in original).) Plaintiff claims that Defendant Horne stated, "let that be a lesson for you suing us and pissing off the ADW [Defendant Bowne]." (*Id.* (brackets in original).)

*Id*.

On April 29, 2022, plaintiff was released from segregation and upgraded to Level IV custody "[D]espite not receiving any misconduct or Notice of Intent[.]" *Id*.

On May 10, 2022, ADW Bowne allegedly told plaintiff "that he 'should not have sued [Defendant Bowne's] staff and wrote [a] grievance on [Bowne], and that Plaintiff would sit

---

[1] ADW Bowne's Class II misconduct report differs significantly from plaintiff's allegations stating as follows:

> On April 26, 2022, at 1310 hours, Prisoner Gordon #308075 (900-71B) entered the West School Building for a weight room callout. Prisoner Gordon had his JP5 player and ear buds with him. Prisoner Gordon was told by Officer Merry he could not have his player in the school building. Prisoner Gordon responded by saying "this is bullshit". I was standing near the officers station at the time and told prisoner Gordon he would need to take the player back to his housing unit. As prisoner Gordon started to walk away from the area he turned around and looking directly at me stated "fucking white people" and then exited the building. Prisoner Gordon's comment was meant to harass and degrade me. Prisoner Gordon ID's by OMNI facesheet and school callout.

*See* Misconduct Report (ECF No. 53-7, PageID.339). Plaintiff waived a hearing, pled guilty, and was sanctioned to 7 days loss of privileges. *Id*.

in level IV and think about it until Bowne [wa]s ready to release him back to level II.' " *Id*. at

PageID.73.

> On May 11, 2022, non-party Prison Counselor Miller contacted plaintiff.
>
> After the telephone call, Prison Counselor Miller told Plaintiff: "Per Inspector Williams . . . you're back here because you pissed off ADW Bowne, wrote [a] grievance on him and sued staff here. So get comfortable, looks like you're going to be here for a while." (*Id*.) Plaintiff claims that Prison Counselor Miller told Plaintiff that Defendant Williams "put a hold on [Plaintiff], meaning Plaintiff could not be moved without Williams's authorization." (*Id*.) Plaintiff filed a grievance about the matter. (*Id*.)

*Id*.

> The Court construed the complaint as alleging the following acts of retaliation.
>
> Defendant Bowne issued [plaintiff] a false misconduct ticket for insolence; Defendant Bowne placed him in segregation and then subsequently moved him to a higher security level; Defendant Williams placed a hold on Plaintiff, meaning Plaintiff could not be moved from the higher security level without Defendant Williams's authorization; and Defendants Horne and John/Jane Doe Corrections Officers destroyed his personal property.

*Id*. at PageID.75.  Plaintiff seeks punitive damages, declaratory relief, and injunctive relief. *Id*. at

PageID.73.

The Court has dismissed the claim that Bowne retaliated against plaintiff by issuing

him a false misconduct ticket. *See* Order (ECF No. 44).  All other claims remain.

## II. Legal standard

### A. Summary judgment

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is

genuinely disputed must support the assertion by:

3

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

According to the docket sheet, plaintiff did not file a responsive brief as required by W.D. Mich. LCivR 7.2(c) ("any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials"). That being said, plaintiff filed a paper entitled "Motion for summary judgement against defendants Williams and Bowne" (ECF No. 56). As defendants point out, this "motion", dated December 6, 2024, and docketed on December 16, 2024 (ECF No. 55), is untimely to be a motion for summary judgment. *See* Amended Case Management Order (ECF No. 47) (setting dispositive motion deadline of November 20, 2024). However, upon review, plaintiff's motion appears to be a timely

4

responsive brief with exhibits directed at defendants' motion for summary judgment. Accordingly, the Court will construe it as his response to defendants' motion.

Finally, in addition to the exhibits attached to the parties' briefs, the Court has reviewed plaintiff's "verified" complaint. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).

### B.    Defendants' motion

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants seek summary judgment based on the affirmative defense of qualified immunity. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make

reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016). "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor." *Id*. "When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

Defendants contend that they are entitled to qualified immunity because plaintiff failed to establish retaliation in violation of the First Amendment.[2] "As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks and brackets omitted). To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage

---

[2] While defendants present this motion as based on the affirmative defense of qualified immunity, they frame their argument as a motion for summary judgment on the merits, *i.e.*, "This Court should grant summary judgment to the Defendants as to Gordon's First Amendment retaliation claim against them based on qualified immunity because Gordon cannot establish a causal connection between his protected conduct and the alleged adverse actions the Defendants took against him." *See* Defendants' Brief (ECF No. 53, PageID.294). Defendants do not contend that they made a "reasonable but mistaken judgment" with respect to plaintiff. *See Carroll*, 574 U.S. at 17. Rather, they deny that retaliation occurred and seek summary judgment because plaintiff failed to establish an element of his retaliation claim.

6

in that conduct; and (3) there is a causal connection between elements one and two." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, defendants contend that plaintiff failed to establish the third element, a causal connection between the protected conduct and the adverse action. To satisfy the causal connection requirement, the plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399. Conclusory allegations of retaliatory motive are insufficient. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir. 2004). Instead, plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred. *See Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) ("temporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive") (internal quotation marks omitted). "Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001), citing *Thaddeus-X*, 175 F.3d at 399.

C.    **ADW Bowne**

Plaintiff alleged that ADW Bowne retaliated against him by placing him in segregation and moving him to a higher security level.

As discussed, on April 27, 2022, Bowne issued plaintiff a misconduct for insolence arising from an incident that occurred on April 26, 2022.

At some point in time, Inspector Williams received a kite which indicated that plaintiff and another prisoner, James Grissmon, possessed a cellphone. Williams Decl. (ECF No. 53-6, PageID.335).

7

On April 28, 2022, COs conducted a raid and removed prisoners Larry Currington, James Grissmon, and plaintiff from unit 900.  Horne Decl. (ECF No. 53-5, PageID.332); Williams Decl. at PageID.336.  A memorandum from Williams to ADW Nevins stated that as staff approached cell 900-71 (plaintiff's cell), plaintiff tossed something under the door of cell 900-76 (Prisoner Currington's area of control), where staff recovered two cellphones.  Williams Memo (ECF No. 55-6, PageID.381). "The cellphone [sic] was mailed to the Michigan Department of Corrections Intelligence Unit to extract data from it" and "[t]he Michigan State Police [MSP] conducted a criminal investigation regarding the Plaintiff's possession of the cell phone." Williams Decl. at PageID.336.

On April 28, 2022, plaintiff was transferred to temporary segregation.  Bowne Decl. at PageID.327.

On April 29, 2022, Bowne authorized plaintiff's security level to increase from Level II to Level IV "because he was being investigated for possessing a cell phone." *Id*.  Bowne stated that,

> On August 10, 2022, the MDOC transferred the Plaintiff to housing unit 700, which a Level II housing unit, because the facility had not received any information back from the MDOC's Intelligence Unit. Enough time had elapsed from the incident on April 28, 2022, for the MDOC to monitor his conduct.

*Id*.  Then, on August 11, 2022, plaintiff received a misconduct violation and his security level was upgraded to Level IV.  PageID.328.

ADW Bowne states that he had a legitimate non-retaliatory basis to raise plaintiff's security level from II to IV, based on MDOC Policy Directive (PD) 05.01.140 ¶ F (eff. Nov. 1, 2017 and eff. Aug. 1, 2022) (ECF Nos. 53-8 and 53-9)) which allows a warden of a facility with multiple security levels to authorize placement of a prisoner in a higher security level within the facility. *Id*. at PageID.327.

8

In his response, plaintiff states that ADW Bowne "sent him from Level 2 security to Level 4 security in retaliation for [plaintiff] filing prior lawsuit against his subordinates and threatening to sue him." Plaintiff's Brief (ECF No. 55, PageID.357). Plaintiff contends that ADW Bowne's declaration is false and that the MSP investigation "never existed." *Id*. at PageID.358. Contrary to plaintiff's assertion, defendants have presented evidence of an MSP investigation. As discussed, the MSP investigation is referenced in defendant Williams' declaration. In a memo to ADW Nevins, Bowne notes that on April 28, 2022, plaintiff was involved in an incident in which two cell phones were recovered by staff. Memo (ECF No. 55-1, PageID.368). Bowne advised that, "Prisoner Gordon will remain in level IV housing until the MSP investigation is completed at which time a determination will be made on his confinement level." *Id*. In Bowne's answers to plaintiff's interrogatory asking him to "State and Identify the Detective or MSP personal [sic] in charge of the investigation into Plaintiff," Bowne responded:

> I was not the Inspector at the time, I don't have the information for the MSP referral, as far as I know the cell phone was sent to the MDOC-INTEL Unit for extraction. These cases and referrals are handled through the facility Inspector and I was the Acting Assistant Deputy Warden at that time.

Interrogatory Response (ECF No. 55-2, pageID.370).

With respect to placing plaintiff in Level IV during the investigation, plaintiff cited Inspector Williams' memo to ADW Nevins (ECF No. 55-6, PageID.381) which stated in part,

> Since PD allows for multi-level facilities to place a prisoner within any one of the settings, I had Gordon moved to Level IV until MDOC Intel concludes the extraction of the phone. Once extraction is complete, I anticipate we will recover data tying Gordon to the phone and will be able to issue him the appropriate misconducts.

*Id*. Plaintiff also cites Williams' responses to requests for admissions, which included at No. 4:

> 4. Admit that the same alleged investigation of Plaintiff could have been conducted while Gordon was in Level 2

9

> RESPONSE: I admit that the Plaintiff could have remained in Level II. However, any time there is an active criminal investigation, it is more conducive to conduct the investigation while the offender is housed in a more controlled environment. This is due to several factors, including being able to more closely monitor communications between other prisoners and between civilians (phones and JPay). Per PD 05.01.140, Prisoner Placement and Transfer, a Warden of a facility with multiple security levels may authorize the placement of a prisoner in another security level within that facility.

Williams Admissions (ECF No. 55-4, PageID.376) (Emphasis omitted). In his declaration, Williams reiterated that "[w]hen there is an ongoing criminal investigation, it is easier to monitor a prisoner at a higher security level." Williams Decl. at PageID.336.

This record reflects that while Bowne was not required to increase plaintiff's security from Level II to Level IV, he had a legitimate basis for the increase based on the cellphone investigation. Bowne has shown that, absent the alleged protected activity, he would have placed plaintiff at Level IV. *See Smith*, 250 F.3d at 1038. Accordingly, Bowne's motion for summary judgment should be granted.

### D. CO Horne

Plaintiff alleged in his verified complaint that CO Horne, CO John Doe, and CO Jane Doe destroyed his personal property. PageID.75. According to plaintiff, CO Horne told him that the officers did it because plaintiff was "suing us and pissing off the ADW." PageID.72.

At his deposition, plaintiff testified that he had only a brief encounter with CO Horne:

> Q When Mr. Horne approached you when you were in cell 21, that would've been the detention unit and you were in temporary segregation. What happened when he approached you?
>
> A He brought the property in. I asked him could I get a receipt for my property, a property receipt, and he told me that a property receipt should be the least of my worries because basically him and the rest of the COs had just trashed my property. And that – that's a lesson for me suing the staff and pissing off ADW Boone.

>Q  You're saying he admitted essentially that he was retaliating against you by destroying your property?
>
>A  He had a -- very blunt there.

Gordon Dep. (ECF No. 53-3, PageID.321).

With respect to the property damage, plaintiff testified that he received only one shoe from each of the pairs of shoes in his property and only one noodle ("I had a whole bunch"). Gordon Dep. at PageID.321-322.  However, it is unclear whether plaintiff lost any property.  After plaintiff had unit officers call over to get his things, a lady put "the odd missing shoes and stuff" in a bag and brought it to him.  *Id*.   Next, there is no evidence that CO Horne damaged plaintiff's property. Plaintiff did not witness Horne pack his property.  *Id*. at PageID.319. In this regard, Horne denied that he packed up plaintiff's property or destroyed the property.  Horne Decl. at PageID.332.  Finally, Horne denied that he retaliated against plaintiff based on his grievance and litigation history because he had no knowledge of that history prior to the raid on April 28, 2022.  *Id*.[3]  Based on this record, plaintiff has not shown a causal connection between the alleged protected conduct and the alleged adverse action by CO Horne.  Accordingly, Horne's motion for summary judgment should be granted.

        **E.**    **Inspector Williams**

Plaintiff alleged that Inspector Williams placed a hold on him, meaning that plaintiff could not be moved from the higher security level without Williams' authorization. Contrary to plaintiff's allegation, Williams stated in his declaration that "[a]s the inspector at DRF, I worked in an advisory role" and  "I did not have the authority to place a hold on the Plaintiff prohibiting him to be placed in a lower security level." Williams' Decl. at PageID.336.   Plaintiff

---

[3] Plaintiff did not respond to Horne's arguments.  As discussed, his response was directed to defendants Williams and Bowne.

has failed to present evidence that Williams had the authority to make decisions regarding his security level.[4] The motivations of non-decisionmakers, such as Inspector Williams, "cannot establish a causal connection in a retaliation case." *See Echlin v. Boland*, 111 Fed. Appx. 415, 417 (6th Cir. 2004) (citing *Smith*, 250 F.3d at 1038 and *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir.1999). Accordingly, Inspector Williams' motion for summary judgment should be granted.

### III. Doe defendants

As discussed, plaintiff's lawsuit includes two unidentified "Doe" defendants (CO John Doe and CO Jane Doe). A "Doe" defendant listed in a complaint is not a party to a lawsuit. Rather, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted). The failure to identify and serve a Doe defendant constitutes failure to prosecute and warrants a dismissal of that defendant. *See Saucier v. Camp Brighton Prison*, No. 13-15077, 2016 WL 11468926 at *3 (April 26, 2016), *R&R adopted*, 2016 WL 3251761 (E.D. Mich. June 14, 2016). Plaintiff filed this action in 2022. Discovery is closed and plaintiff has not identified the Doe defendants.[5] If the Court adopts this report and grants summary judgment in favor of defendants, then there will be no other party remaining in this lawsuit. Under those circumstances, plaintiff cannot maintain a lawsuit against two unserved, unidentified "Doe" defendants, and this Court should dismiss plaintiff's lawsuit without prejudice.

### IV. Recommendation

---

[4] The Court notes that while Williams appeared to have substantial influence on the matter, *see, e.g.*, Memo to Nevins ("I had Gordon moved to Level IV until MDOC Intel concludes the extraction of the phone.") (PageID.381), there is no evidence that the Williams had authority to set plaintiff's security level.

[5] The Court did not order service on the Doe defendants, noting that "the Court is unable to order service on these Defendants because Plaintiff has not provided sufficient information to identify Defendants." Order (ECF No. 19, PageID.124).

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 52) be **GRANTED**, that plaintiff's motion for summary judgment (ECF No. 55) be **DENIED**, that plaintiff's claims against "John Doe" and "Jane Doe" be **DISMISSED without prejudice**, and that this lawsuit be **terminated**.

Dated: August 5, 2025　　　　　　　　　　　　　　/s/ Ray Kent
　　　　　　　　　　　　　　　　　　　　　　　　RAY KENT
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).